UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARBARA MORA AND MEREDITH NEILL, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION H-12-3211 |
| TERRY KOY, INDIVIDUALLY and as TRUSTEE of an UNKNOWN TRUST; KOY CONCRETE LTD.; and KOY CONCRETE MANAGEMENT, LLC, | § § § § § | |
| *Defendants*. | § § | |

## ORDER

Pending before the court is defendants Terry Koy ("Koy"), Koy Concrete, Ltd. ("Koy Concrete"), and Koy Concrete Management, LLC's ("Koy Management") motion to dismiss. Dkt. 5. The court, having considered the motion, the response, and the applicable law, is of the opinion that the motion should be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Barbara Mora and Meredith Neill allege that they were investors in C&J Land & Cattle, Inc. ("C&J"). Dkt. 3. C&J ran into financial hardship and decided to sell a 92 acre tract of unimproved real property in Sealy, Texas (the "Property") to defendant Terry Koy. *Id.* Koy granted C&J an option to repurchase the Property (the "Option") upon performance of certain conditions. *Id.* The Option prohibited Koy from using the Property "in a manner which shall substantially interfere with future development of the [P]roperty as a residential subdivision." Dkt. 3, Ex. A-6 ¶ 5. The Option was signed on November 21, 2008, and C&J had until November 30, 2012, to exercise the Option. *Id.* ¶ 2.

The Property had been partially platted by C&J for residential real estate development. Dkt. 3.  By April of 2009, C&J had ceased all of its operations, and creditors were attempting to foreclose on portions of the Property.  *Id.*  In order to prevent foreclosures and save the residential development project, Mora, Neill, and another C&J investor—Lisa Quinn—filed an involuntary petition for bankruptcy against C&J requesting reorganization under Chapter 11 of the Bankruptcy Code.  *Id.*  The case was later converted to a voluntary case and eventually converted to a case under Chapter 7 of the Bankruptcy Code.  *Id.*  Mora and Neill negotiated with David J. Askanase, the bankruptcy trustee, to obtain an assignment of the Option, which was an asset of C&J's bankruptcy estate.  *Id.*  Under the assignment, Mora and Neill were to pay all fees necessary to extend the term of the Option ($10,000 due at that time), and $40,000 to Mr. Askanase for the benefit of C&J's bankruptcy estate.  *Id.*  On November 30, 2009, the bankruptcy court approved the application to assign the Option, so long as the trustee received Koy's consent to assign the Option.  *Id.*

The term of the Option was from December 1, 2008 through November 30, 2012.  *Id.*  Koy could terminate the Option if the Option was not exercised or a payment of $10,000 was not made prior to December 1 of each year from 2009 through 2011.  *Id.*  Mora and Neill claim that they made all of these payments to Koy in person.  *Id.*  On April 29, 2011, after problems in consummating the consent from Koy, Mr. Askanase reduced the $40,000 payment requirement, and issued a notice of private sale, giving notice that he was selling the Option to the plaintiffs' attorney, John Hampton, for the benefit of Mora and Neill, for $1,000.  *Id.*  There was no objection to this notice.  *Id.*

In the summer of 2012, Mora and Neill allegedly discovered that a large part of the Property had been dug up or excavated.  *Id.*  In late 2012, before Mora and Neill were finished with the research to determine the amount of damage to the Property, the plaintiffs allege that Mr. Askanase insisted on receiving the final payment of $1,000 to close the sale of the Option.  *Id.*  Thus, on behalf

2

of Mora and Neill, John Hampton delivered a check for $1,000 to Mr. Askanase on November 8, 2012. *Id.* On November 13, 2012, Mr. Askanase executed and delivered the bill of sale assigning C&J's bankruptcy estate's interest in the Option to John Hampton, who subsequently assigned the Option to the plaintiffs. *Id*.

Mora and Neill allege that their investigation revealed that Koy, who owns and operates Koy Concrete and Koy Managment, caused Koy Concrete and Koy Management to dig up large areas of the Property for use in their concrete manufacturing business. *Id*. Mora and Neill claim that this excavation of sand was intentional, that it occurred on over 20 acres of the 92 acre tract, and that the excavation significantly impairs Mora and Neill's ability to develop the Property or to sell it to a third-party developer. *Id*. This, they allege, is in direct breach of a provision in the Option that prohibits Koy from using the Property in a manner that substantially interferes with the future development of the Property as a residential subdivision. *Id*. Mora and Neill allege that the defendants chose to excavate far enough back into the 92 acre tract so that the excavation could not be seen from the road at the face of the Property. *Id*. Mora discovered the excavation from a Google Map of the Property, and when she went to see the excavated land in person, she claims that she was stopped by neighbors who told her that Koy instructed them to watch over the Property to make sure that no one entered onto it. *Id*. Mora was subsequently asked to leave. *Id*.

Mora and Neill assert that Koy did not disclose the removal of the sand to them when they were making their Option payments to Koy. *Id*. However, Mora and Neill allege that upon discovery of the excavation, they were obligated to disclose what they discovered to the potential lender and the developers with whom they were meeting. *Id*. This allegedly chilled any ability to obtain final approval of financing and other agreements necessary to exercise the Option and purchase the Property. *Id*. Mora and Neill claim that the excavation caused significant delays and

3

hindered their ability to develop the residential subdivision as planned. *Id.* Mora and Neill thus brought this lawsuit for breach of contract, fraud and fraudulent inducement, unjust enrichment, and tortious interference with contract, and they seek reformation of the contract to extend the term of the Option until such a time as Koy has remediated the Property to its previous condition. *Id.* Mora and Neill also seek attorneys' fees and injunctive relief. *Id.*

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). In considering a 12(b)(6) motion, the court must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Additionally, courts do not look beyond the face of the pleadings to determine whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554 (internal citations omitted). The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* "Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *NuVasive, Inc. v. Renaissance Surgical Ctr.*, 853 F. Supp. 2d 654, 658 (S.D. Tex. 2012).

4

**B.     Rule 9(b)**

Allegations of fraud must also meet the stricter standards of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "At a minimum, Rule 9(b) requires that the plaintiff specify the particulars of 'time, place, and contents of the false representations.'" *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 179 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1068 (5th Cir. 1994)).  Rule 9(b) generally requires the plaintiff to allege the "who, what, when, where, and how" in the complaint.  *Williams,* 112 F.3d at 179.  Pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 185 (5th Cir. 2009) (internal quotations omitted) (referring to the standard enunciated in *Twombly*).

### III. ANALYSIS

The plaintiffs set forth the following as causes of action in their first amended complaint: (1) breach of contract; (2) fraud and fraudulent inducement; (3) constructive trust/unjust enrichment; (4) equitable remedy of reformation; and (5) tortious interference with existing contract/business relations.  Defendants move to dismiss all claims except the breach of contract claim.  Defendants move to dismiss the fraud claim under Rule 9(b) and the tortious interference claim under Rule 12(b)(6).  Dkt. 5.  They assert that the constructive trust/unjust enrichment and reformation claims are merely remedies, not causes of action.[1]  *Id.*

---

[1] Defendants address the plaintiffs' breach of contract claim in their reply, but they did not address it in the motion to dismiss.  Therefore, the court does not address the breach of contract claim.

A.      **Fraud**

Mora and Neill have alleged that Koy committed fraud and fraudulently induced them into purchasing the Option and continuing to make the Option payments by failing to disclose and, in fact, covering up that his companies were excavating the land.  Dkt. 3.  Mora and Neill state in their complaint that "Koy made false statements and representations *and/or* omitted to disclose material facts."  Dkt. 3 (emphasis added).  They do not, however, state any particularities with regard to affirmative false statements.  Instead, the factual allegations indicate only nondisclosure.  *Id.*  The court, thus, will analyze their claim as one of fraud by nondisclosure.[2]

Fraud by nondisclosure is a subcategory of fraud because the nondisclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose.  *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied) (citing *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.,* 217 S.W.3d 653, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)).  The elements of a claim for fraud by nondisclosure are: (1) concealment or failure to disclose a material fact within the knowledge of the party; (2) knowledge that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) intent to take some action by concealing or failing to disclose the fact; and (4) injury to the other party as a result of acting without the knowledge of the undisclosed fact.  *NuVasive, Inc.*, 853 F. Supp. 2d at 663-64 (citing *Cardinal Health Solutions, Inc., v. Valley Baptist Med. Ctr.,* 2009 WL 150942, at *13 (S.D. Tex. Jan. 21, 2009).  A plaintiff must also show that there was a duty to disclose.  *Bradford v. Venton,* 48 S.W.3d 749, 755 (Tex. 2001).

---

[2]Courts have recognized this sua sponte. *See NuVasive, Inc.,* 853 F. Supp. 2d at 661.

Whether a duty exists is a question of law. *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex. 2001). A duty to disclose may arise in certain situations: (1) where there is partial disclosure; or (2) when the parties have a confidential or fiduciary relationship. *Myre*, 307 S.W.3d at 843. "Unfortunately, Texas law is anything but straightforward regarding the extent to which a duty to disclose exists absent a confidential or fiduciary relationship," and "this issue is clearly unresolved by the Fifth Circuit." *NuVasive Inc*., 853 F. Supp. 2d at 661-62. District courts have thus "been left to determine" when such a duty to disclose exists. *Id.* Absent an equal opportunity to discover withheld information, a duty to disclose might exist. *Suzlon Wind Energy Corp v. Shippers Stevedoring Co.*, 662 F. Supp.2d 623, 651 (S.D. Tex. 2009). Further, in the context of a real estate transaction, a seller is under a duty to disclose material facts that would not be discoverable by the exercise of ordinary care and diligence by the purchaser, or that a reasonable investigation and inquiry would not uncover. *Myre*, 307 S.W.3d 843.

Here, the defendants argue that "long before C&J sold the Property to Terry Koy in late November, 2008, Koy Concrete was removing topsoil and sand from the Property with C&J's express permission."[3] Dkt. 5. Further, the defendants claim that the plaintiffs have made only speculative and conclusory statements that do not allege how or why the Property cannot now be used as a residential subdivision. *Id*. The defendants also argue that the plaintiffs failed to allege fraud with the particularity that is required by Federal Rule of Civil Procedure 9(b) because the plaintiffs do not specify the time, place, or content of any alleged misrepresentations. *Id*.

While it is true that the plaintiffs have not alleged what false statements or representations were made, when, or where, they have alleged fraud by nondisclosure with sufficient particularity.

---

[3] The defendant's rely on an affidavit by Joseph C. Abraham, Vice-President, Secretary/Treasurer of C&J in 2008. Dkt. 5, Ex. 1. Since the courts do not look beyond the face of the pleadings to determine whether a plaintiff has stated a claim, it cannot consider this evidence.

If the fraud is by nondisclosure, even if no affirmative statements were made, a failure to disclose

a material fact which induced the plaintiffs to continue in a course of conduct may be actionable.[4]

Here, Mora and Neill allege in their complaint that Koy knew they were relying on his

nondisclosures of material information and that they relied on these nondisclosures to their detriment

by continuing to make Option payments.   Dkt. 3.   Mora and Neill's complaint specifies "the

who–Koy; the what–failure to disclo[se] the excavation; the when–during the time period that the

[p]laintiffs were paying Koy the option extension payments; the where–at Koy's office where they

bought the payments; the how–taking the [p]laintiffs' money for option extensions and not disclosing

the excavation to them."   Dkt. 7 at 6-7 (Mora and Neill's response).   The court finds that the "who,

what, when, why, and how" were sufficiently pled.   *See* Pet. ¶ 11, 15, 21.   Therefore, the defendants'

motion to dismiss the fraud claim is DENIED.

**B.      Constructive Trust/Unjust Enrichment**

Although unjust enrichment is usually characterized as a basis for quantum meruit recovery,

it can be a independent cause of action.   *See Cristobal v. Allen*, No. 01-09-00126-CV, 2010 WL

2873502, at *6 (Tex. App.—Houston [1st Dist.] July 22, 2010, no pet.) (citations omitted).[5]   Unjust

enrichment occurs when the defendant wrongfully secures a benefit or passively receives a benefit

which would be unconscionable to retain.   *Id.* (citing *Tex. Integrated Conveyor Sys. v. Innovative*

---

[4]   *See NuVasive, Inc.,* 853 F. Supp. 2d at 663 n.3 (stating that "in light of the argument in its Response, which focuses on nondisclosure, the Court understands Renaissance to be asserting a claim only for fraudulent inducement through nondisclosure. If Renaissance intends to assert a claim based on affirmative misrepresentations, the Court agrees that such a claim would have to be dismissed, as Renaissance does not allege facts with sufficient particularity to support such a claim under the standard set forth in Rule 9(b).").

[5]   *See id.* at n.1.   The court recognized that other courts of appeals have held that unjust enrichment is not an independent cause of action. *See, e.g., Bartnett v. Coppell N. Tex. Court Ltd.,* 123 S.W.3d 804, 816-17 (Tex. App.—Dallas 2003, pet. denied).

*Conveyor Concepts, Inc.,* 300 S.W. 3d 348, 367 (Tex. App.—Dallas 2009, pet. denied). "The phrase 'unjust enrichment' is used in law to characterize the result [of] the failure to make restitution of benefits under such circumstances as to give rise to an implied or quasi-contract to repay." *Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex.,* No. H-11-2086, 2012 WL 3028107, at *4 (S.D. Tex. July 24, 2012) (citing *Fun Time Ctrs., Inc., v. Cont'l Nat'l Bank of Ft. Worth,* 517 S.W.2d 877, 884 (Tex. App.—Tyler 1974, writ ref'd n.r.e.)).

Under Texas law, a constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *Borneo Energy Sendirian Berhad v. Sustainable Power Corp.,* 646 F. Supp. 2d 860, 870 (S.D. Tex. 2009) (citing *Hubbard v. Shankle,* 138 S.W.3d 474, 485 (Tex. App.—Fort Worth 2004, pet. denied). To obtain a constructive trust, the proponent must prove: (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Id.*

Mora and Neill seek the imposition of a constructive trust against the Property in order to prevent Koy from being unjustly enriched by his actions and conduct. Dkt. 3. They allege that Koy used his special relationship with them and hid an excavation project from them, from which he and his concrete company benefitted unjustly. Mora and Neill also allege that Koy's actions made it impossible for them to exercise the Option to repurchase the Property, further unjustly enriching Koy. *Id.*

The defendants argue that "constructive trust/unjust enrichment and reformation are merely remedies, not causes of action." Dkt. 5. However, courts have stated that "this argument is incorrect." *Newington Ltd v. Forrester*, No. 3:08-CV-0864-G ECF, 2008 WL 4908200, at *3 (N.D. Tex. Nov. 13, 2008). Further, although "Texas courts may waffle about whether unjust enrichment is a theory of recovery or an independent cause of action . . . either way, they have provided the

plaintiff with relief when the defendant has been unjustly enriched." *Id.* (citing *Baisden v. I'm Ready Prods, Inc.,* Civ. A. H-08-0451, 2008 WL 2118170, at *10 (S.D. Tex. May 16, 2008)).

The plaintiffs allege that Koy caused Koy Concrete and Koy Management to dig up large areas of the Property for use in their concrete manufacturing business.  Dkt. 3. Because "Koy owns and operates Koy Concrete and Koy Management," it is plausible that through his companies, Koy has been unjustly enriched.  *Id.*  Thus, because the court takes the facts alleged in the complaint as true, defendants' motion to dismiss the unjust enrichment claim is DENIED.  *Cf. Mid-Town Surgical Ctr., LLP,* 2012 WL 3028107, at *4.

## C.    Equitable Remedy of Reformation

The plaintiffs seek reformation of the Option "to extend the term during which the [p]laintiffs may exercise the option to purchase the Property until such time as Koy has remediated the Property to its previous condition so that it may be used consistent with a residential development." Dkt. 3. The defendants claim that reformation is merely a remedy, not a cause of action. However, courts have held that "[r]eformation of a contract is a recognized cause of action in Texas." *Liu v. Yang*, 69 S.W.3d 225, 228-29 (Tex. App.—Corpus Christi 2001, no pet.).  When there has been a mistake by one party, accompanied by fraud or other inequitable conduct of the remaining party, the instrument may be made to conform to the agreement or transaction entered into, according to the intention of the parties.  *Id.* (citations omitted).  Therefore, the defendants' motion to dismiss on the ground that reformation is not a cause of action is DENIED.

## D.    Tortious Interference with Existing Contract/Business Relations

"Interference with a business relationship is similar to the to the tort of contract interference." *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 335 (Tex. App.—Houston [14th Dist.] 1991, no writ).  However, it is unnecessary to prove the existence of a valid contract in proving interference

with a business relationship. *Id.* By definition, a party to a contract cannot tortiously interfere with his or her own contract, and a party to a business relationship cannot tortiously interfere with him or herself. *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 561-62 (S.D. Tex. 1999), *aff'd*, 224 F.3d 765 (5th Cir. 2000); *Am. Med. Int'l, Inc.*, 821 S.W.2d at 335. Only a third party who is an outsider to the business relationship can be liable for tortious interference. *Am. Med. Int'l, Inc.*, 821 S.W.2d at 335. An agent whose financial interest is the same as the company that is privy to the contract is not generally considered a third party, so long as he or she is acting within the agency's scope. *Id.* Further, an employee who is acting within the course and scope of his employment is, as a matter of law, immune from liability for tortiously interfering with his employer's business relations. *Crawford v. Charles Schwab & Co., Inc.*, No. 3:09-CV-0666-G, 2009 WL 3573658 (N.D. Tex. Oct. 30, 2009); *Holloway v. Skinner,* 898 S.W.2d 793, 796 (Tex. 1995).

Mora and Neill allege that Koy Concrete and Koy Management knew of the existence of the Option and the business relationship between Mora and Neill and Koy, and that knowing of its existence, Koy Concrete and Koy Management intentionally interfered with the Option and with Mora and Neill's business relations with Koy, which proximately caused the plaintiffs' damages. The defendants argue that "[a]s a matter of law, Koy Concrete and Koy Management cannot tortiously interfere with Terry Koy," and "[b]y definition, the person who induces the breach cannot be a contracting party." Dkt. 5.

The court agrees with the defendants. Because the complaint alleges that Koy owns and operates Koy Concrete and Koy Management, and there is no indication in the complaint that his interests were not aligned with his companies' interests, he could not interfere with his own contracts. Therefore, the defendants' motion to dismiss the tortious interference with existing

contract/business relations claim is GRANTED.   This claim is hereby DISMISSED WITH PREJUDICE.

## IV. CONCLUSION

Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) (Dkt. 5) is GRANTED IN PART and DENIED IN PART.   The motion is GRANTED with regard to the tortious interference with exiting contract/business relations claim; it is DENIED in all other respects.   The tortious interference with existing contract/business relations claim is hereby DISMISSED WITH PREJUDICE.   Since there are no remaining claims against defendants Koy Concrete and Koy Management, Mora and Neill's case against those defendants is DISMISSED.

It is so ORDERED.

Signed at Houston, Texas on May 23, 2013.

_____
Gray H. Miller
United States District Judge

12